Charles **MUSCARELLA**, Executor of the Estate of Josephine Carbo, individually and on behalf of all others similarly situated, Petitioner

v.

**COMMONWEALTH** of Pennsylvania, Respondent.

Commonwealth Court of Pennsylvania.

Decided Jan. 11, 2012.

Publication Ordered Jan. 18, 2012.

Richard F. Stern, Jenkintown and Mitchell A. Kramer, Rydal, for petitioner.

Carol L. Weitzel, Chief Deputy Attorney General, Harrisburg, for respondent.

OPINION BY Judge BROBSON.

Before us is a motion for class certification filed by Charles Muscarella (Petitioner), Executor of the Estate of Josephine Carbo. This motion is presented as an ancillary proceeding in an appeal from the Board of Finance and Revenue (F & R) under Section 763 of the Judicial Code, 42 Pa.C.S. § 763, and Pa. R.A.P. 1571. In the class action petition for review, Petitioner seeks to obtain, individually and on behalf of other similarly situated persons and estates, monetary damages from Respondent Commonwealth of Pennsylvania (Commonwealth) for the Commonwealth's failure to rebate property taxes under what is commonly referred to as the Senior Citizens Property Tax and Rebate Assistance Act, Act of June 27, 2006, P.L. 1873 (Spec.Sess. No. 1), 53 P.S. §§ 6926.1301–.1313 (2006 Rebate Act), which is a continuation of the former Act of March 11, 1971, P.L. 4, *as amended*, 72 P.S. §§ 4751–1 to –12, commonly referred to as the Senior Citizens Rebate and Assistance Act (Prior Rebate Act) (collectively referred to as the Rebate Acts).[1]

According to the averments in the class action petition for review, Josephine Carbo (Decedent), before her death, owned property in Plymouth Township, Norristown, Pennsylvania. (Stipulation of Facts (S.F.) 2; Reproduced Record (R.R.) at 70a.) For 2008 and for some years prior to 2008, Decedent filed claims for rebates for property taxes paid on her property, and she obtained rebates for those years. (S.F. 3; R.R. at 70a.) Decedent died on November 13, 2009. (S.F. 4; R.R. at 70a.)

On June 23, 2010, Petitioner filed with the Commonwealth of Pennsylvania, Department of Revenue (Department), a property tax claim form PA–1000, seeking a rebate for property taxes paid on Decedent's property for the year 2009. (S.F. 4–5; R.R. at 70a.) On July 30, 2010, the Department denied Petitioner's claim for the 2009 property tax rebate on the basis that Decedent died prior to January 1, 2010. Petitioner filed an appeal with the Department's Board of Appeals (Board of Appeals), and the Board of Appeals denied the appeal on September 1, 2010. (S.F. 6;

---

1. The provisions of the Rebate Acts have remained virtually unchanged since the enactment of the Prior Rebate Act in 1971, with the exception of changes in the rebate amount.

R.R. at 70a–71a.) Petitioner petitioned F & R for review, and F & R denied Petitioner's appeal by decision and order dated December 14, 2010. (*Id.*) Thereafter, on January 6, 2011, Petitioner filed with the Commonwealth Court the subject class action petition for review.[2] (S.F. 8; R.R. at 71a.)

In the class action petition for review, Petitioner asserts that the Rebate Acts provide for the rebate of a portion of property taxes to claimants who meet age and income qualifications. Petitioner also asserts that the provisions of the Rebate Acts do not provide that an estate cannot be a claimant or that a claimant who has paid a property tax due during a calendar year must survive the entire year in order to make a valid claim. The Rebate Acts invest a committee, consisting of the Secretaries of the Departments of Aging, Revenue, and Community Affairs (Committee), with the authority to prescribe necessary rules and regulations. Section 1309(a) of the 2006 Rebate Act, 53 P.S. § 6926.1309(a), formerly Section 9(a) of the Prior Rebate Act, 72 P.S. § 4751–9(a). The Rebate Acts also provide for an apportionment of the rebate if the claimant occupied the property for only a portion of the year. Section 1304(c) of the 2006 Rebate Act, 53 P.S. § 6926.1304(c), formerly Section 4(c) of the Prior Rebate Act, 72 P.S. § 4751–4(c), *as amended.* The current regulation, which was slightly modified from those in force during the earlier years of the Prior Act, defines a "claimant" for purposes of property tax rebates, as follows: "The term claimant shall be de-

fined in accordance with the following: . . . (iv) A claim for a property tax rebate . . . may be filed by the personal representative of a decedent's estate if, and only if, the decedent lived during some part of the year next succeeding the calendar year for which a rebate is claimed" (the Current Regulation). 61 Pa.Code § 401.1. Petitioner asserts that the Current Regulation exceeds the mandate given the Committee in the Rebate Acts, because the Current Regulation is not a necessary regulation and because it bears no reasonable relation to the purposes or language of the Rebate Acts. Petitioner further asserts that the Current Regulation, as applied to decedents' estates, violates the Equal Protection and Due Process clauses of the United States and Pennsylvania Constitutions.

On March 29, 2011, Petitioner filed with this Court a motion for certification of class action, which is now before us. This Court conducted a hearing on September 26, 2011. During the hearing, the parties entered into the record stipulations of fact for class certification determination, which this Court adopts as our findings of fact. (R.R. at 70a–131a.)

█ Before the Court may consider whether Petitioner has demonstrated the prerequisites for class certification under Pa. R.C.P. Nos. 1702, 1708, and 1709, one threshold issue must be addressed— whether a class action may be utilized to obtain individual property tax rebates. Petitioner argues that a class action may be maintained in this instance based upon

**2.** Prior to the filing of the subject class action petition for review, Petitioner filed a similar petition for review with this Court on June 24, 2010, addressed to the Court's original jurisdiction and docketed at 552 M.D. 2010. (S.F.7.) The petition for review sought to initiate a class action to recover property tax rebates for Petitioner and a class of similarly situated persons and estates. By order dated

October 27, 2010, however, this Court sustained the Commonwealth's preliminary objections and dismissed the petition for review, without prejudice to Petitioner's right to file another petition for review after exhausting all of his administrative remedies. (*Id.*) The subject petition for review was filed *after* Petitioner exhausted his administrative remedy before the F & R.

our Supreme Court's opinion in *McConnell v. Department of Revenue*, 503 Pa. 322, 469 A.2d 574 (1983) (*McConnell II* ), which addresses the almost *identical* scenario and claims.[3] The Commonwealth contends that the Supreme Court's holding in *McConnell II* is more limited than suggested by Petitioner and that this matter may not be maintained as a class action because Pennsylvania law does not permit a class action to proceed where, as here, there are clearly defined rights of appeal. The Commonwealth contends that Petitioner and other persons and estates making up the purported class are required by statute to follow specific procedures for seeking redress and may not, therefore, pursue relief through a class action. In support of that position, the Commonwealth cites *Lilian v. Commonwealth*, 467 Pa. 15, 354 A.2d 250 (1976), a case decided *prior* to the Supreme Court's decision in *McConnell II*. The Commonwealth also cites *Aronson v. City of Pittsburgh*, 98 Pa.Cmwlth. 1, 510 A.2d 871 (1986) (*Aronson II* ), a case involving a class action complaint in assumpsit filed in a court of common pleas to obtain individual tax refunds of business privilege taxes erroneously paid to the City of Pittsburgh.

In *McConnell II*, following the death of John McConnell, the appellants, William and Richard McConnell, in their capacity as Co–Executors of the Estate of John McConnell and on behalf of others similarly situated, filed with the Board of Appeals a class action, seeking property tax rebates under the Prior Rebate Act for the calendar year in which decedents died.

The appellants sought to challenge the validity of the Department's then-current regulation (Prior Regulation), which provided:

> A claim for a property tax rebate or rent rebate in lieu of property taxes may be filed by the personal representative of a decedent's estate if, and only if, the decedent were alive on or after January 1 of the year next succeeding the calendar year for which a rebate is claimed.

61 Pa.Code § 401.43(a).

The Board of Appeals determined that it did not have jurisdiction to consider a class action for rebates and denied the appellants' request for a rebate to be paid to the Estate of John McConnell. The appellants appealed to F & R, which sustained the Board of Appeals' determination. Thereafter, the appellants appealed to this Court by way of a class action petition for review, seeking (1) certification of the matter as a class action, and (2) appellate review of the F & R's determination denying the refund and refusing to certify the matter as a class action. The Commonwealth Court then denied the motion to certify appellants' suit as a class action, noting that the appellants were engaged in the *appellate* process, not the Court's original jurisdiction. *See McConnell v. Department of Revenue*, 52 Pa.Cmwlth. 479, 415 A.2d 1012 (1980) (*McConnell I* ), *rev'd*, 503 Pa. 322, 469 A.2d 574 (1983).

On direct appeal, the Supreme Court considered whether the Commonwealth Court, in an action seeking review of a F &

---

**3.** Petitioner avers that the subject class action is essentially identical to a class action matter filed by the Estate of John McConnell, seeking rebates for persons and estates who filed valid claims for rebates under the Prior Rebate Act and who were otherwise eligible for such rebate, but who died prior to January of the following year. That litigation, docketed at 2508 C.D. 1980 and conducted approximately thirty (30) years ago, was filed by the *same* counsel that brings the action *now* before this Court. Ultimately, as discussed in more detail below, the Supreme Court in *McConnell II* directed this Court to consider the request for class certification filed by the Estate of John McConnell. Upon remand, the Commonwealth Court certified the matter as a class action.

R decision, may entertain a request to certify an action as a class action. The Supreme Court concluded that "the Commonwealth Court should have considered the appellants' motion on the merits." *McConnell II,* 503 Pa. at 325, 469 A.2d at 576. The Supreme Court, despite noting that the statutory provisions and governing rules "specifically provide for the maintenance of rent rebate actions only by individual claimants," *id.* at 327, n. 8, 469 A.2d at 577 n. 8, further wrote:

> [I]f appellants are to have any opportunity to obtain class certification in this case, that opportunity will have to come before the Commonwealth Court, since neither the statute nor the rules governing actions for rent rebates before the Department of Revenue and Board of Finance and Revenue authorizes the maintenance of a class action.

*Id.* at 327, 469 A.2d at 577. Recognizing the benefits of class actions, the Supreme Court wrote:

> [I]n order to promote the interests of judicial administration and justice by eliminating the possibility of repetitious litigation and providing claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation, we hold that the Commonwealth Court, in addition to try the merits of appellants' case, must also entertain appellants' request for class certification.

*Id.* at 327–28, 469 A.2d at 577–78.

On remand to this Court, Judge Mac-Phail, in a single-judge, unreported opinion, granted the appellants' motion for class certification. *McConnell v. Commonwealth,* No. 2508 C.D.1980 (Pa. Cmwlth., filed December 7, 1984) (*McConnell III* ). In so doing, Judge MacPhail wrote:

> Concerning the criteria for certification, we are of the opinion that the common

question of law predominates over questions affecting only individual members; the size of the class and difficulties pertinent to the management of the action are not overwhelming; it is doubtful that there would be separate answers if there were individual actions; there has been no other similar litigation commenced; the Supreme Court has designated this Court as an appropriate forum for the litigation of the claims; and, it is doubtful that undivided claims would be prosecuted because the sums recoverable would be minimal but the total amount recovered does justify the expense of a class action.

*McConnell III,* slip opinion at 4–5. The Commonwealth did not appeal.

This Court in *Smolow v. Commonwealth,* 131 Pa.Cmwlth. 276, 570 A.2d 112 (1990), *affirmed,* 527 Pa. 371, 592 A.2d 40 (1991), in an attempt to harmonize the case law regarding the ability to pursue class actions, considered the Supreme Court's holdings in *Lilian, McConnell II,* and *Stevenson v. Department of Revenue,* 489 Pa. 1, 413 A.2d 667 (1980), and this Court's holding in *Aronson II.* In *Smolow,* we framed the question as "whether a taxpayer who erroneously pays a tax either to a local agency or, in this case to the Commonwealth, and who has a cause of action in her own individual right for a refund, may bring a class action." *Smolow,* 570 A.2d at 119. As to *McConnell II,* we noted:

> A careful analysis of the *McConnell* cases will reveal therefore that, even though class action certification is a procedural device, *Lilian,* the underlying substantive cause of action must be examined when considering whether there is authority to employ the procedure. Petitioner asserts that *McConnell II* is on point with her case but we must disagree and observe that what was ulti-

mately sought in the *McConnell* cases was not a tax refund as in this case presently before us, but a property tax or rent rebate pursuant to an entitlement program. Thus, the underlying cause of action in *McConnell II* (as well as *McConnell I*) was not a refund for a tax voluntarily paid and, in fact, the underlying cause of action did not involve taxes at all.

*Id.* at 120 (citation omitted). Thus, in *Smolow*, we distinguished between a class action seeking a rent or property tax *rebate* under an entitlement program (the Prior Rebate Act) from a class action seeking a *refund* of taxes erroneously, but voluntarily, paid.

Continuing to examine the differences between class actions for refunds of taxes and other types of class actions, our Court in *Smolow* examined the Supreme Court's decision in *Stevenson*. *Stevenson* involved a named plaintiff and others who brought separate actions before the Board of Arbitration of Claims (what is now the Board of Claims), seeking to have their claims heard on behalf of themselves and other first prize winners of the "Big Fifty Bonus Lottery." The Supreme Court in *Stevenson* held that the Board of Arbitration of Claims had the authority to entertain a class action. Examining the Supreme Court's decision in *Stevenson*, holding that a suit for a class action could be maintained, we noted in *Smolow* that "[a]gain, however, we must take into account that the underlying cause of action there concerned not a suit brought for a refund of taxes, but a suit upon a contract." *Id.*

Similarly, this Court in *Smolow* examined the Supreme Court's decision in *Lilian*, a case decided prior to the Supreme Court's decision in *McConnell II*. *Lilian* involved a complaint filed in equity in this Court's original jurisdiction seeking class action certification. The plaintiffs in *Lili-*

*an* sought to compel the Department to refund a portion of sales tax paid by them (and other similarly situated individuals). Specifically, the plaintiffs purchased a new vehicle and paid a federal excise tax. The plaintiffs also paid Pennsylvania sales tax that was calculated based upon the purchase price of the vehicle and the amount of federal excise tax imposed. Thereafter, the federal government repealed and refunded the excise tax. The plaintiffs sought to recover the amount of Pennsylvania sales tax they had paid on the federal excise tax. In *Smolow*, we observed:

> The [Supreme] Court in *Lilian* found that a remedy for the tax refund was provided for in Sections 252 through 255 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* and thus concluded that if the Lilians had no individual right to avail themselves of *equitable* jurisdiction, they could not acquire the right to such jurisdiction by the mere assertion of class status.
>
> . . .
>
> Thus a close reading of *Lilian* discloses that it does not address the precise issue before us as it held only that a class action remedy is not available in equity where an adequate statutory remedy exists. The instant case, however, was not brought in equity in our original jurisdiction, but as an ancillary matter in an appeal from the Board, and *procedurally,* that is permissible, *McConnell II.*

*Id.* at 121 (emphasis in original).

Finally, our Court in *Smolow* considered its earlier opinion in *Aronson II*, where we concluded that a court of common pleas properly denied a motion for class certification where an individual had an adequate statutory remedy available (to secure the refund of a business privilege tax erroneously paid) that was available only to the individual aggrieved and was not transferrable. After examining the above cases,

this Court in *Smolow* denied the motion for class certification, having determined that *Aronson II*, not *McConnell II*, applied to the factual scenario in *Smolow*, because both *Smolow* and *Aronson II* involved a refund for a tax erroneously paid.

Given the Supreme Court's decision in *McConnell II* and the opinions that have since followed, and given that Petitioner brings this class action in our *appellate jurisdiction* (not our equity jurisdiction) seeking a *rebate* of a property tax (not a refund of taxes erroneously paid) under circumstances almost identical to those before the Court in *McConnell II*, we will follow *McConnell II*. Thus, Petitioner is not precluded from maintaining a class action to pursue claims for rebates, provided that Petitioner's action otherwise meets the requirements for class certification.

■ Pennsylvania Rules of Civil Procedure 1701–1716, relating to class actions, apply to proceedings such as this one, where an appellate court must sit as a trial court to entertain a class action petition for review. *McConnell II*, 503 Pa. at 324–25, 469 A.2d at 576. The criteria for class certification are set forth in Pennsylvania Rule of Civil Procedure 1702, entitled Prerequisites to a Class Action, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;
>
> (4) the representative parties will fairly and adequately assert and protect

> the interests of the class under the criteria set forth in Rule 1709; and
>
> (5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

Pa. R.C.P. No. 1702. The criteria for class action certification are often referred to as numerosity, commonality, typicality, fair and adequate representation, and fairness and efficiency.

■ "The burden of proving that class certification is appropriate falls upon the party seeking certification," and "decisions in favor of maintaining a class action should be liberally made." *Foust v. Se. Pa. Transp. Auth.*, 756 A.2d 112, 118 (Pa. Cmwlth.2000). "While the class proponent's burden is not heavy, more than mere conjecture or conclusory allegations are required to enable a court to conclude that the class certification requirements are met." *Dunn v. Allegheny Cnty. Prop. Assessment Appeals and Review*, 794 A.2d 416, 423 (Pa.Cmwlth.2002), *affirmed*, 590 Pa. 620, 913 A.2d 863 (2006). The proponent of class certification "must only present sufficient evidence to make out a prima facie case" that the five requirements for class certification are met. *Keppley v. Sch. Dist. of Twin Valley*, 866 A.2d 1165, 1170–71 (Pa.Cmwlth.2005). "[I]n doubtful cases, any error should be committed in favor of allowing class certification." *Foust*, 756 A.2d at 118. Moreover, courts are vested with broad discretion in defining the class based on commonality of issues and the propriety of maintaining the action on behalf of the class. *Foust*, 756 A.2d at 116.

■ In order to determine whether Petitioner has established that class action certification is appropriate, we will first consider whether the action meets the requirements for numerosity. There is no specific numeric formula for maintaining a

class action, and courts must examine the circumstances of each action to determine whether "the class is so numerous that joinder of all members is impracticable." *See Dunn,* 794 A.2d at 423; Pa. R.C.P. No. 1702(1). As to numerosity, this Court has explained:

> There is no clear test of numerosity, but it is proper for a court to inquire whether the number of potential individual plaintiffs would pose a grave imposition on the resources of the court and an unnecessary drain on the energies and resources of the litigants should such potential plaintiffs sue individually. When a class is narrowly and precisely drawn and there are still so many potential class members that joinder is impracticable or impossible, the class is sufficiently delineated to meet the numerosity requirement.

*Foust,* 756 A.2d at 118 (citations omitted).

■ Petitioner has defined the class as all those persons who filed valid claims for rebate of property taxes under the Rebate Acts for the years 2003 through 2008, who paid property taxes the subsequent calendar year, and who were otherwise eligible to receive property tax rebates for the subsequent calendar year, but who died on or before December 31 of that subsequent calendar year and did not receive such rebate.[4] (Motion for Certification of Class Action (Motion) at ¶ 1; R.R. at 22a.) According to the parties' Stipulation, between 2004 and 2009, 2,455 rebate claims were filed with the Department and disallowed because the claimant did not survive for the full calendar year in which the tax was paid. (Stipulation at ¶ 13; R.R. at 71a.)

The claim form instructions (and relevant regulation) precluded proposed class members from seeking a rebate. (Stipulation at ¶ 14; R.R. at 71a.) Petitioner essentially argues that the instructions and regulation had a chilling effect on estates that should have been entitled to rebates under the Rebate Acts, and those estates may have filed for rebates in the absence of the allegedly offending instructions and regulation. Petitioner assumes, therefore, that there were a number of other estates that did not make claims during those years because they were informed or believed that they were ineligible. For those reasons, Petitioner asserts that the class contains at least 2,455 members and is likely larger.

Because the number of class members are in excess of two thousand and conceivably could be larger, the Court is satisfied that individual suits would be taxing on this Court's resources and that joinder of each of the individual claims would be impracticable. As a result, we conclude that Petitioner has met his burden to establish numerosity.

■ Next, we will consider whether "there are questions of law or fact common to the class." *See* Pa. R.C.P. No. 1702(2). We have explained this requirement of commonality, as follows:

> To be certified, Rule 1702(2) requires a class proponent to establish "questions of law or fact common to the class." "The common question of fact means precisely that the facts must be substantially the same so that proof as to one claimant could be proof as to all." Common questions will generally exist if the

---

4. By way of example, the class would include the estates of persons who paid property tax in 2003, filed a valid rebate claim (in 2004) for the 2003 property tax rebate, received the 2003 rebate, paid property tax in 2004, and who died in 2004. Similarly, the class would include the estates of persons who paid property tax in 2004, filed a valid rebate claim (in 2005) for the 2004 property tax rebate, received the 2004 rebate, paid property tax in 2005, and who died in 2005. And so on.

class members' legal grievances arise out of the same practice or course of conduct on the part of the class opponent. However, while the existence of individual questions essential to a class member's recovery is not necessarily fatal to class certification, common questions of law or fact must predominate over individual questions.

*Buynak v. Dep't of Transp.*, 833 A.2d 1159 (Pa.Cmwlth.2003), *appeal denied*, 580 Pa. 691, 859 A.2d 769 (2004) (citations omitted).

■■■ Petitioner posits that common questions in this matter include: (1) whether, under the provisions of the Rebate Acts, the estate of a person otherwise eligible for a rebate may claim and receive the rebate if said person died on or before December 31 of the year in which the property taxes were paid; (2) whether, under the provisions of the Rebate Acts, the Committee, as prescribed by the Rebate Acts, promulgated an invalid regulation whose effect was to bar an estate from receiving a rebate; and (3) whether, in light of the earlier litigation instituted by the Estate of McConnell in 1980, the Committee should have been required to amend the regulations to make them consistent with the Rebate Acts. (Class Action Petition for Review at ¶ 21(c), R.R. at 11 a.) Petitioner argues that common questions of law and fact thus predominate over any question affecting only individual members. The common questions of law are whether the Current Regulation is unconstitutional and whether it has any rational basis as to estates. The common question of fact is the amount of the rebate to which members of the class are entitled. Petitioner explains that the amount, which

is based on income and the amount of property taxes paid, will be 10% of the property taxes paid, up to $650 with interest. (Stipulation at ¶ 22; R.R. at 72a.) Petitioner contends that the amount of the rebate can be determined in the same manner as the Commonwealth has been determining it for years. This factual question related to the amount of the rebate is common to all members of the class.

The Commonwealth contends that individual issues predominate this litigation because facts differ amongst those in the purported class. The Commonwealth focuses on the fact that some class members did not file any rebate claims for the year in which the decedent died, some class members filed rebate claims with the Department, some filed a petition for review with the Board of Appeals, and some filed appeals with F & R.

Applying the commonality standard to the instant matter, we hold that the Department's practice of denying rebates under the Rebate Acts for property taxes paid if the property owner died on or before December 31 of the year in which he paid the property taxes supplies the course of conduct requisite to establishing commonality of fact and law. Thus, Petitioner has met his burden to prove the element of commonality.[5]

■■■ Rule 1702(3) requires us to consider whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Pa. R.C.P. No. 1702(3). The concept of typicality requires that the class representative's "overall position on the common issues is sufficiently aligned with that of the absent class members to ensure that [the

---

5. For reasons discussed below, we reject the Commonwealth's argument that it is significant for purposes of the class action whether the decedents' estates filed for rebates for the year in which potential class members died or appealed the denial of rebates to the Department's Board of Appeals, F & R, or this Court.

class representative's] pursuit of her interests will advance those of the proposed class." *Keppley,* 866 A.2d at 1174. Courts examine whether the named plaintiff's "individual circumstances are markedly different" and whether "the legal theory upon which the claims are based differs from that upon which the claims of other class members will be based." *Buynak,* 833 A.2d at 1164. The existence of factual distinctions between the claims of the named plaintiff and the claims of the proposed class will not necessarily preclude a determination of typicality. *Keppley,* 866 A.2d at 1176. "While commonality tests the sufficiency of the class itself by focusing on the class claims, typicality tests the sufficiency of the named plaintiff by focusing on the relationship between the named plaintiff and the class as a whole" *Buynak,* 833 A.2d at 1164.

Petitioner notes that the class is defined as all those persons or the estates of all those persons who filed valid claims for rebate of property taxes under the Rebate Acts for the years 2003 through 2008, who paid property taxes for the subsequent calendar year, and who were otherwise eligible to receive property tax rebates for the subsequent calendar year, but who died on or before December 31 of that subsequent year. (Motion at ¶ 1; R.R. at 22a.) Josephine Carbo, the representative claimant, filed a claim for property taxes for 2008 and received a rebate for that year. She paid her property taxes in 2009 and was otherwise eligible to receive a rebate for 2009 but for the fact that she died before December 31, 2009. (Stipulation ¶¶ 1–4; R.R. at 70a.) For those reasons, Petitioner argues that Josephine Carbo's estate is typical of the class and precisely aligns itself with the claims of all of the class members.

The Commonwealth disputes that Petitioner has met its burden to prove typicality. The Commonwealth argues that although Petitioner, having timely filed a petition for review, may be properly before this Court, the other purported class members appear not to be. Also, individual claimants must satisfy multiple criteria to show eligibility for a rebate, and it is not clear from the record whether, in the absence of the Department's denial on the basis of 61 Pa.Code § 401.31(a), the class members otherwise would have qualified for the rebate.

We are satisfied that Petitioner's claims are typical of other class members' claims, because their claims arise out of the same course of conduct, involve the same legal theories, and do not raise divergent goals or interests. The Commonwealth's contention that typicality does not exist as to some purported class members because they failed to file for rebates or pursue appeals of a denial all the way to this Court is disingenuous in the face of instructions and regulations informing purported class members of their lack of entitlement to rebates. Also, while class members will certainly be required to provide some form of documentation of their eligibility for refunds, we are satisfied also that Petitioner's conduct likely does not vary significantly from the conduct of other class members whose decedents died on or before December 31 of the year for which they seek rebates of property tax paid and who did not receive property tax rebates to which Petitioner alleges that they are entitled. Petitioner, therefore, has established the requisite typicality.

Next, we consider whether "the representative parties will fairly and adequately assert and protect the interest of the class under the criteria set forth in Rule 1709." Pa. R.C.P. No. 1702(4). Rule 1709, relating to "Criteria for Certification[—]Determination of Fair and Adequate Representation," provides:

In determining whether the representative parties will fairly and adequately assert and protect the interests of the class, the court shall consider among other matters

(1) whether the attorney for the representative parties will adequately represent the interest of the class,

(2) whether the representative parties have a conflict of interest in the maintenance of the class action, and

(3) whether the representative parties have or can acquire adequate financial resources to assure that the interests of the class will not be harmed.

Pa. R.C.P. No. 1709. With regard to the first factor, generally courts will assume that the members of the bar are skilled in their profession until the contrary is demonstrated. *Dunn,* 794 A.2d at 425. As to the second factor, generally courts will presume that there is no conflict of interest unless the contrary is established. *Dunn,* 794 A.2d at 425–26. Addressing the third factor, courts have accepted affidavits of counsel that they will advance the necessary costs as sufficient evidence to support a finding that adequate financial resources exist and also have accepted the lack of a challenge to the ability to finance the litigation as sufficient to establish adequate financial resources. *Dunn,* 794 A.2d at 426.

In the case at hand, Petitioner and the Commonwealth stipulated to the ability of Mitchell A. Kramer, Esquire, and Richard F. Stern, Esquire, Petitioner's counsel, to adequately represent the interests of the class. (Stipulation at ¶ 20; R.R. at 72a.) Petitioner stipulated that he is not aware of any conflict of interest, and the parties agree that Petitioner's interest is adverse to the Commonwealth's interest. (Stipulation at ¶¶ 17–18; R.R. at 72a.)

Finally, the last factor— whether the class action "provides a fair and efficient method for adjudication of the controversy"—must be examined in light of the criteria of Rule 1708, which provides as follows:

In determining whether a class action is a fair and efficient method of adjudicating the controversy, the court shall consider among other matters the criteria set forth in subdivisions (a), (b) and (c).

(a) Where monetary recovery alone is sought, the court shall consider

(1) whether common questions of law or fact predominate over any question affecting only individual members;

(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

(3) whether the prosecution of separate actions by or against individual members of the class would create a risk of

(i) inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

(ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

(4) the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues;

(5) whether the particular forum is appropriate for the litigation of the claims of the entire class;

(6) whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate actions;

(7) whether it is likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action.

(b) Where equitable or declaratory relief alone is sought, the court shall consider

(1) the criteria set forth in subsections (1) through (5) of subdivision (a), and

(2) whether the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final equitable or declaratory relief appropriate with respect to the class.

(c) Where both monetary and other relief is sought, the court shall consider all the criteria in both subdivisions (a) and (b).

Pa. R.C.P. No. 1708. In determining fairness and efficiency, we must balance the interests of both the present and absent litigants and the interests of the court system. *Dunn,* 794 A.2d at 427. Public policy and the purpose of class actions favor "the aggregation of small claims that that would otherwise go unlitigated in individual actions." *Dunn,* 794 A.2d at 427. The last factor of Rule 1708, which requires "consideration of potential difficulties in managing a class action[,] is generally not accorded much weight." *Dunn,* 794 A.2d at 427. The reason that last factor is not heavily weighted is rooted in the fact that "the court has extensive powers to ensure the efficient conduct of an action and it has the power to revoke, alter or modify its certification order if later developments in the litigation render class certification inappropriate." *Dunn,* 794 A.2d at 427.

At this juncture, we do not perceive any significant judicial administration concerns that warrant denial of certification. As discussed above, the Court is satisfied that questions of law or fact predominate over questions affecting only individual members. Also, the number of potential class members is sufficiently large to justify a class action. This is not an instance where there appears to be any concern that possible prosecution of separate actions would create a risk of inconsistent or varying adjudications based upon incompatible standards of conduct, because the main issue here is whether the regulation may require an otherwise eligible taxpayer to survive the entire tax year in order to receive a property tax rebate. The very nature of this issue, however, makes it highly likely that an adjudication of this matter on an individual basis would, as a practical matter, be dispositive of the interests of persons not parties to the individual adjudication. Moreover, we are not aware of any litigation already commenced by members of the class (with the exception of appeals to the Board of Appeals and to F & R as mentioned above) involving any of the same issues. We have already determined, based on *McConnell II,* that this Court is the appropriate forum for such claims. The matters are not so complex and the amounts not sufficiently substantial to justify individual actions. In fact, the relatively small amount of monetary recovery available to each potential class member (a maximum of $650 per member), makes it unlikely that these claims would be litigated in the absence of a class action, but the aggregated amount of the potential recovery is sufficient to make pursuit of recovery through a class action worthwhile for the class members.

Finally, to the extent that Petitioner may be seeking declaratory relief as to the validity of the Current Regulation, the Commonwealth "has acted or refused to act on grounds generally applicable to the class" in denying the rebates to estates of persons who did not survive the entire year in which they paid property taxes, "thereby making final equitable or declaratory relief appropriate with respect to the class." *See* Pa. R.C.P. No. 1708(b)(2).

For the reasons set forth above, we grant Petitioner's motion for class certification.

### ORDER

AND NOW, this 11th day of January, 2012, the Petitioner's motion for class certification is granted, as follows:

1. The class shall consist of those persons or the estate of all those persons who, having filed valid claims for rebate of property taxes under the Senior Citizens Property Tax and Rebate Assistance Act, Act of June 27, 2006, P.L. 1873 (Spec. Sess. No. 1), 53 P.S. §§ 6926.1301–.1313, which is a continuation of the former Act of March 11, 1971, P.L. 4, *as amended*, 72 P.S. §§ 4751–1 to –12, commonly referred to as the Senior Citizens Rebate and Assistance Act, for the years 2003 through 2008, who paid property taxes in the subsequent calendar year, and who were otherwise eligible to receive property tax rebates for the subsequent calendar year, but who died on or before December 31 of that subsequent year and did not receive such rebates.

2. Every member of the above-described class is included in the class, unless a member files of record a written election to be excluded from the class. The deadline for members to file a written election shall be on or before a date to be determined following a hearing on the proposed form of notice.

3. A proposed form of notice to the class shall be prepared by counsel for Petitioner pursuant to Pa. R.C.P. No. 1712(c), and it shall be filed with the Court and served upon counsel for Respondent on or before February 13, 2012. Any objections to the proposed notice shall be filed with the Court and served upon Petitioner's attorney on or before March 14, 2012.

4. A hearing on the proposed form of notice and any objections thereto is hereby set for March 28, 2012, at 10:00 a.m., in Courtroom 3001 of the Pennsylvania Judicial Center, 601 Commonwealth Ave., Harrisburg, Pennsylvania. In addition to the above, the parties should be prepared to address at the hearing a date by which members must elect to be excluded from the class.