Lawrence W. DUNN, Carole L. Dunn, Coin Flip Associates, Highland Farms, Inc., Lowries Run Road Trust Agreement and Mayview Road Associates Trust Agreement,

v.

ALLEGHENY COUNTY PROPERTY ASSESSMENT APPEALS AND REVIEW, Keystone Oaks School District, Aleppo Township, Allegheny County, Aspinwall Borough, Avonworth School District, Baldwin–Whitehall School District, Ben Avon Borough, Braddock Hills Borough, Chartiers Valley School District, Collier Township, Coraopolis Borough, Crafton Borough, East Allegheny School District, Frazer Township, Ingram Bor-

ough, Kennedy Township, Kilbuck Township, Leet Township, Moon Area School District, Mt. Lebanon School District, Mt. Lebanon Township, Osborne Borough, Penn Hills School District, Pennsbury Village Borough.

Plum Borough School District, Robinson Township, Sewickley Heights Borough, Sto–Rox School District, Wilkinsburg School District,

v.

Allegheny Valley School District, Baldwin Township, Bell Acres Borough, Bethel Park Municipality, Bethel Park School District, Dennis R. Biondo, Blawnox Borough, Bradford Woods Borough, Carlynton School District, Castle Shannon Borough, Cheswick Borough, City of Clairton, City of McKeesport, City of Pittsburgh, Clairton City School District, Core Defense Committee, Dormont Borough, Duquesne City School District, East McKeesport Borough, Edgeworth Borough, Elizabeth Borough, Elizabeth Forward School District, Elizabeth Township, Emsworth Borough, Findlay Township, Fox Chapel Borough, Franklin Park Borough, Gateway School District, Glenfield Borough, Hampton Township, Hampton Township School District, Harmar Township, Harrison Township, Heidelberg Borough, Jefferson Borough, McCandless Township, McKeesport Area School District, Montour School District, Moon Township, Neville Township, North Allegheny School District, North Fayette

Township, Northgate School District, O'Hara Township, Oakdale Borough, Penn Hills Municipality, Pine Township, Pine Richland School District, Pitcairn Borough, Quaker Valley School District, Ross Township, School District of Pittsburgh, Scott Township, South Allegheny School District, South Fayette Township, South Park School District, Stowe Township, Thornburg Borough, Versailles Borough, West Allegheny School District, West Elizabeth Borough, West Mifflin Area School District, Whitehall Borough, Wilkins Township, Woodland Hills School District.

James T. Beebout and Karen L. Ferri,

v.

Allegheny County Property Assessment Appeals and Review, Avonworth School District, Bethel Park School District, Chartiers Valley School District, Moon Area School District, North Allegheny School District, Northgate School District, Penn Hills School District, South Park School District, West Allegheny School District.

Appeal of Lawrence W. Dunn, Carole L. Dunn, Coin Flip Associates, Highland Farms, Inc., Lowries Run Road Trust Agreement, Mayview Road Trust Agreement, James T. Beebout and Karen L. Ferri.

Commonwealth Court of Pennsylvania.

Argued May 7, 2001.
Decided March 11, 2002.

Dusty Elias Kirk and Samuel P. Kamin, Pittsburgh, for appellants.

Ira Weiss, Pittsburgh, for appellees.

Before DOYLE, Senior Judge,[1] KELLEY, Senior Judge and FLAHERTY, Senior Judge.

OPINION BY Senior Judge DOYLE.

Appellants[2] appeal from a September 19, 2000 order of the Court of Common Pleas of Allegheny County denying their renewed motion for class certification. On the sole issue of whether Common Pleas should have certified the class, we reverse.

On January 1, 1996, the Allegheny County Board of Property Assessment, Appeals and Review (Board) adopted a resolution, which froze property assessments throughout Allegheny County. The County Commissioners adopted a similar resolution the next day intending the freeze to remain in effect until a county-wide reassessment was completed or until

---

1. This case was assigned to the opinion writer prior to the date when President Judge Doyle and Judge Kelley assumed the status of senior judge on January 1, 2002.

2. The Appellants before us are Lawrence W. Dunn, Carol L. Dunn (his wife), Coin Flip Associates (a PA General Partnership), Mayview Road Associates Trust Agreement, Highland Farms Inc., and Lowries Run Road Trust Agreement, on behalf of all similarly situated taxpayers.

five years had elapsed. Wentworth Miller and other Allegheny County taxpayers instituted an action for declaratory judgment against the freeze alleging that, although their properties were properly assessed, there were widespread disparities in the assessment of comparable properties throughout Allegheny County and that the Board had failed to perform its statutory obligation to operate an assessment system that was uniform. (The "Wentworth Miller Litigation".) They asserted that this resulted in a disproportionate burden of taxation on them.

On April 18, 1997 and May 22, 1997, the Allegheny County Court of Common Pleas issued orders that determined that the freeze was unlawful, ordered the Board to undertake a county-wide reassessment, and ordered that steps be taken to remediate the negative effects of the freeze. Lawrence Dunn, then a County Commissioner and now an appellant, filed an appeal with this Court. We granted a motion to quash his appeal on the grounds that Mr. Dunn lacked standing to take the appeal either individually or in his official capacity on behalf of the county commissioners. *See Miller v. Board of Property Assessment, Appeals and Review of Allegheny County,* 703 A.2d 733 (Pa.Cmwlth. 1997).

In early 1998, the Board filed a petition for modification of the April 18th and May 22nd, 1997 orders of Common Pleas, which resulted in an order dated January 15, 1998, that included the imposition, by Common Pleas, of a 2% increase in assessed fair market value for 1999 for all

properties in Allegheny County, with an additional 2% increase in assessment in 2000.[3] On January 13, 1998, Mr. Dunn filed the instant action, which was consolidated with a similar action brought by a group known as the "Beebout/Ferri plaintiffs."[4] The Board filed an answer, but the County did not. Subsequently, Appellants filed an amended complaint on September 14, 1999, joining all local taxing authorities in Allegheny County as a defendant class. Common Pleas then established a "Core Defense Committee" to represent the interests of the County taxing authorities.

Appellants filed a motion and a renewed motion for certification of a class described "as all owners of taxable residential, commercial, and industrial real estate in the County of Allegheny who received a Change Notice from the Board, or a tax bill on real property from the County, increasing their assessment by 2%, more or less." (Plaintiffs' Renewed Motion for Class Certification, p. 2.) An evidentiary hearing was conducted, limited to class certification issues, and an order was issued on September 19, 2000, denying Appellants' renewed motion for class certification.

Judge Stanton Wettick, Jr.'s opinion on behalf of Common Pleas is lengthy and restates the history that led up to his order increasing property assessments. He indicates that, when he declared the assessment freeze invalid in April of 1997, he ordered a county-wide reassessment by 2001 for the 2002 tax year and re-

---

**3.** In early January 1999, "notice of assessment change" mailers were sent to about 414,000 property owners in the county.

**4.** Also in January of 1999, James T. Beebout and Karen L. Ferri filed a class action complaint on behalf of themselves and others similarly situated arising out of the Board's assessment increase, as applied to their prop-

erties. The Dunn plaintiffs moved to have the actions consolidated, which motion was granted. However, the Beebouts and Ferris had filed a parallel tax appeal, thus rendering their claims moot and negating their representative status because they had been granted administrative appeals.

tained jurisdiction over the implementation of that order. He issued a supplemental order in May of 1997, recognizing that, because the freeze had prevented any revision of assessments to that date and, because the county assessors who performed this function had lost their jobs, the Board was in no position to make revisions for 1997 and 1998. Thus, he limited the task to identification of properties that were significantly overassessed or underassessed.

Subsequently, he received a petition from Appellees for further modification. Appellees indicated in that petition that the company hired to conduct the comprehensive reassessment could complete that task by 2000 for use in 2001 (one year earlier) *if* it was not required to expend resources identifying properties that were underassessed or overassessed under Judge Wettick's order. Judge Wettick then concluded that this was in the best interest of the taxpayer, but that, if the Board was permitted to skip this task, the result would be a freeze for the years 1996–2000, and that, if the County was looking to pay for the comprehensive county-wide reassessment through any increased revenue generated from the annual revisions for 1999 and 2000, skipping this task would have an adverse impact on County revenues available to pay for the reassessment. For that reason, he imposed the 2% increase in assessments across the board.

With respect to the current litigation, Judge Wettick's order does not explicitly tie the denial of class certification to any particular subsection of Pa. R.C.P. No. 1702 (relating to prerequisites to a class action), although it appears that he denied certification on the basis of typicality and a fair and efficient method of adjudication. He concluded that there would be no benefit to the class because any damage award would be paid by increasing the taxes of the class members to pay for their award. He opined that, if the purpose of the lawsuit was to vindicate Mr. Dunn's claim that the orders issued by him constituted overreaching by the court, then Mr. Dunn is not a valid representative of this class. Judge Wettick was also of the opinion that if his 2% increase was of such concern, then the appropriate action would have been for the electorate to elect school board members, township commissioners and municipal council members who would reduce millage rates to offset his 2% increase. Only the Dunn plaintiffs have appealed the order to this Court.[5]

Initially, we must examine this Court's jurisdiction, that is, whether the order under appeal from Common Pleas denying class certification is final and appealable. Pennsylvania law permits four types of appeals: an interlocutory appeal as of right, Pa. R.A.P. 311; an appeal from a final order, Pa. R.A.P. 341; an appeal from a collateral order, Pa. R.A.P. 313, and an interlocutory appeal by permission under Pa. R.A.P. 312. Prior to the 1992 amend-

---

5. The standard of review of an appeal from class certification was articulated by this Court in *In re Mackey*, 687 A.2d 1186, 1192 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 548 Pa. 638, 694 A.2d 623 (1997) (quoting *Janicik v. Prudential Insurance Co. of America*, 305 Pa.Super. 120, 451 A.2d 451, 454 (1982)), wherein we stated:

A lower court's decision concerning class certification is a mixed finding of law and fact entitled to 'appropriate deference' upon appeal. .... 'Trial courts are vested with broad discretion in determining [the] definition of the class as based on commonality of the issues and the propriety of maintaining the action on behalf of the class.' .... Consequently, a lower court's order concerning class certification will not be disturbed on appeal unless the court failed to consider the requirements of the rules or abused its discretion. (Citations omitted.)

ments of the Rules of Appellate Procedure, a denial of class certification was considered a final order under Pa. R.A.P. 341.[6] Following the 1992 amendments, the official note to Pa. R.A.P. 341 indicated that, in appropriate cases, denial of class certification might be considered appealable under Pa. R.A.P. 312 (interlocutory appeals by permission)[7] or Pa. R.A.P. 313 (collateral orders).[8] In *Foust v. Southeastern Pennsylvania Transportation Authority*, 756 A.2d 112 (Pa.Cmwlth.2000), we determined that certification of a class action in a toxic tort matter that *permitted the suit to proceed* as a class action, was an interlocutory order that was appealable under Pa. R.A.P. 312 (by permission).[9] However, we believe that a *denial* of class certification, as in this instance, is appealable as a collateral order under Pa. R.A.P. 313.

∎ We find the decision of our sister court, the Pennsylvania Superior Court, in *Niemiec v. Allstate Insurance Co.*, 721 A.2d 807 (Pa.Super.1998), one of a growing line of decisions by that court, instructive. In *Niemiec*, the Superior Court, relying on its prior decision in *DiLucido v. Terminix*, 450 Pa.Super. 393, 676 A.2d 1237, *petition for allowance of appeal denied*, 546 Pa. 655, 684 A.2d 557 (1996), reasoned as follows:

*DiLucido* addresses the appealability of an order denying a request for class certification. A panel of this Court held that an order denying a request for class certification may be appealable as a collateral order under Pa. R.A.P. 313.

. . . .

Our Court has held that orders denying class action certification are appealable under the collateral order doctrine as codified in Rule 313 ... because the issues involved in the certification of a class are typically separate from and collateral to the underlying cause of action for liability raised in the complaint.....

A motion for class action certification is filed after the close of all pleadings, Pa. R.C.P. 1707, and in disposing of this motion, the court's *sole* consideration is whether the action shall continue as a class action or as an action with individual parties. In doing so, the court must consider, *inter alia*, whether the class meets the numerosity, typicality, and commonality requirements of Pa. R.C.P. 1701, as well as other criteria for class certification detailed in Rules 1708 and 1709. The Rules specifically provide

---

6. See official Note to Pa. R.A.P. 341.

7. Pa. R.A.P. 312 provides:
   An appeal from an interlocutory order may be taken by permission pursuant to Chapter 13 (interlocutory appeals by permission).

8. Pa. R.A.P. 313 provides:
   (a) General Rule. An appeal may be taken as of right from a collateral order of an administrative agency or lower court.
   (b) Definition. A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

9. Our decision in *Foust* was based on the Supreme Court decision in *Pincus v. Mutual Assurance Co.*, 457 Pa. 94, 321 A.2d 906 (1974), decided prior to the 1992 amendments, and Pa. R.A.P. 1311 (also relating to interlocutory appeals by permission), whereby we granted Pincus' petition to review after Common Pleas failed to certify its order for immediate appeal. Such is not the case in the instant matter. Further, *Pincus* was based on Pa. R.C.P. No. 2230, which was rescinded five years after the Supreme Court decided *Pincus*, and was replaced by Pa. R.C.P. No. 1710 (relating to an order certifying or refusing to certify a class action).

that "the merits of the action and the right of the plaintiff to recover are to be excluded from consideration...."

Thus, because the considerations involved in disposing of a motion for class action certification are not at all related to the merits of the underlying claims raised in the complaint, it is clear that an order denying class action certification is separate from and ancillary to the main cause of action, and, therefore, appealable pursuant to Pa. R.A.P. 313.

*Niemiec*, 721 A.2d at 809–10 (citations omitted) (emphasis in original) (footnote omitted). *See also Weinberg v. Sun Co., Inc.*, 740 A.2d 1152 (Pa.Super.1999), *petition for allowance of appeal granted*, 564 Pa. 696, 764 A.2d 50 (2000); *Hanson v. Federal Signal Corp.*, 451 Pa.Super. 260, 679 A.2d 785 (1996); *DiLucido*. We adopt the Superior Court's well reasoned analysis and hold that an order denying class action certification is a collateral order and, as such, is appealable under Pa. R.A.P. 313.

■ We turn next to the issue before us as to whether denial of certification of Appellants' class action was proper, bearing in mind that decisions in favor of maintaining a class action should be liberally made. *Janicik v. Prudential Insurance Company of America*, 305 Pa.Super. 120, 451 A.2d 451 (1982). Within the Commonwealth, the class action is a procedural device designed to promote efficiency and fairness in the handling of large numbers of similar claims, while providing a forum for small claimants to seek compensation for claims that would otherwise be too small to litigate. For a suit to proceed as a class action, Pa. R.C.P. No. 1702 requires that five criteria be met:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

■ The burden of proving each of these elements is initially on the proponent of class certification. While the class proponent's burden is not heavy, more than mere conjecture or conclusory allegations are required to enable a court to conclude that the class certification requirements are met. *Cook v. Highland Water and Sewer Authority*, 108 Pa.Cmwlth. 222, 530 A.2d 499 (1987), *petitions for allowance of appeal denied*, 518 Pa. 628, 541 A.2d 1139 (1988); 518 Pa. 629, 541 A.2d 1139 (1988); and 518 Pa. 630, 541 A.2d 1140 (1988). Once the class proponent has established that each of the above elements is satisfied, the class opponent shoulders the burden of proving, with contrary evidence, that class certification is not proper. *Janicik*. Within this framework, we will enumerate the individual prerequisites for class certification and review Common Pleas' consideration of these factors in its denial of class certification.

### *Numerosity*

■ To satisfy this criterion, the class must be both numerous and identifiable, and "[w]hether the class is sufficiently numerous is not dependent upon any arbitrary limit, but upon the facts of each case." *Cook*, 530 A.2d at 503. In the instant matter, numerosity is neither challenged nor addressed by the Respondents or Common Pleas. Appellants assert in

their brief that over 400,000 tax notices were sent out under the challenged order of the court, resulting in a class so numerous that joinder would be impracticable. Even though some 8,000 property owners appealed their assessments in 1999 (Notes of Testimony, dated April 13, 2000, p. 42), the class remains sufficiently numerous that joinder would be impracticable. We hold, therefore, that Appellants have met their burden of establishing numerosity.

## Commonality

■ For class certification, Appellants must also establish that their claim presents "questions of law or fact common to the class[.]" Pa. R.C.P. No. 1702(2). "While the existence of individual questions essential to a class member's recovery (e.g., the amount of damages) are not necessarily fatal to class certification, common questions of law or fact must *predominate* over individual questions." *Cook*, 530 A.2d at 504. (Emphasis in original.) Critical to this standard is the premise that questions or facts common to each class member " 'must be substantially the same so that proof as to one [class member] would be proof as to all.' " *Id.* (Citation omitted.)

■ Appellants argue that commonality is met where the class members' legal grievances arise out of the same practice or course of conduct, relying on *Janicik.* They posit that common questions in this matter include: 1) whether Common Pleas had the authority to issue its January 15, 1998 (2% assessment increase for tax year 1999) order; 2) whether the Board had the authority to issue the change notices issuing the 1999 tax assessment increase; 3)

whether the absence of language in the change notice was sufficient to apprise the taxpayer of whether their taxes were calculated on a proper assessment violated their due process rights; and 4) whether the county taxing jurisdictions will be unjustly enriched if they retain the monies collected under the 2% tax assessment increases. Applying the commonality standard to the instant matter, we hold that the imposition of a 2% tax assessment increase across the board supplies the course of conduct requisite to establishing commonality.

## Typicality

■ As a third step in the certification test, Appellants must demonstrate that their claims or defenses are typical of the claims or defenses of the remaining members of the proposed class. This requires that the "class representatives' overall position on the common issues [be] sufficiently aligned with that of the absent class members to ensure that pursuit of [those] interests will advance those of the proposed class members." *Cook*, 530 A.2d at 505, n. 8.

Appellees argue that Appellants' claims are not typical of the remaining class members because the typical class member will not benefit from the resolution of this class action. They set forth the reasoning of Common Pleas that, because the taxing districts have already collected and disbursed the monies from the 2% tax assessment increases, any relief provided through resolution of this action would result in increased millage rates to provide the revenue to pay for that relief.[10]

10. In support of this argument they cite the following passage from the opinion of the Common Pleas Court:

This litigation does not advance the economic interests of the property owners/taxpayers of Allegheny County as a class because there is no third party who will pay any of the refunds. The taxing bodies will pay refunds by including the amount of the refunds and other costs connected with the

Appellants respond that Common Pleas erred by engaging in speculation when it concluded that, "a class representative who brings a class action seeking monetary relief on behalf of a class is not representing the interests of the class if, by and large, the persons who will receive a monetary award will also ultimately provide the funds for the award." (Common Pleas opinion, p. 19.) Appellants contend that there are a myriad of mechanisms to raise necessary revenues available to municipalities, other than property taxes. They also point out that the taxing jurisdictions have been aware from the start that the taxes collected on the basis of the 2% tax increase in the assessment of all real estate was under attack. Finally, they assert that Common Pleas' argument, if taken to its logical extension, would mean that no group of taxpayers could ever overturn and be refunded money garnered from an unlawful tax. We must agree.

We conclude that the class representatives' claims are typical of other class members' claims because their claims arise out of the same course of conduct, involve the same legal theories, and do not raise divergent goals or interests. Appellants here challenge the authority of the court to impose a tax assessment increase and to adjudicate the issue on an interim basis. We find that Appellees' conduct does not vary significantly from one typical property owner to another among those who received change notices from the Board increasing the real estate assessment of their properties and who paid county, municipal and school district taxes based on the increased assessed valuation. Therefore, we hold that Appellants have met their typicality requirement.

payment of the refunds in their budgets and by setting a millage based on the budget that includes these costs. Memorandum, p. 20.

## Adequacy of Representation

For the class to be certified, Appellants were required to demonstrate that they would "fairly and adequately assert and protect the interests of the class[.]" Pa. R.C.P. No. 1702(4). In determining adequacy of representation, Common Pleas was required to consider the factors set forth in Pa. R.C.P. No. 1709. Pa. R.C.P. No. 1709 provides:

In determining whether the representative parties will fairly and adequately [represent] the interests of the class, the court shall consider among other matters

(1) whether the attorney for the representative parties will adequately represent the interests of the class,

(2) whether the representative parties have a conflict of interest in the maintenance of the class action, and

(3) whether the representative parties have or can acquire adequate financial resources to assure that the interests of the class will not be harmed.

With regard to the first factor, generally, " '[u]ntil the contrary is demonstrated, courts will assume that members of the bar are skilled in their profession.' " *Janicik*, 451 A.2d at 458. (Citation omitted.) As neither Common Pleas nor Appellees raised this issue, we find that Appellants are adequately represented.

Addressing the second factor, courts have generally presumed that there is no conflict of interest on the part of the representative parties unless the contrary is

(Appellees' Brief, p. 9.)

established and "have relied upon the adversary system and the court's supervisory powers to expose and mitigate any conflict." *Id.* at 459. We conclude that no conflict exists as neither Appellees nor Common Pleas raised this issue.

Similarly, there has been no challenge or adverse finding by Common Pleas that the class would lack sufficient resources to maintain the litigation. The Superior Court in *Janicik* indicated that an affidavit of counsel that it will advance the necessary costs may be all that is required to support a finding on this factor, *id.* at 459–60, and, while there is no mention of such an affidavit here, the lack of a challenge is sufficient for us to hold that Appellants met their burden on this factor.

### *Fair and Efficient Method for Adjudication*

Finally, Common Pleas must consider whether allowing Appellants to proceed with the adjudication of this class action would be both fair and efficient under Pa. R.C.P. No. 1708. Pa. R.C.P. No. 1708 sets forth the following factors to be evaluated:

In determining whether a class action is a fair and efficient method of adjudicating the controversy, the court shall consider among other matters the criteria set forth [below]:

(a) Where monetary recovery alone is sought, the court shall consider

    (1) whether common questions of law or fact predominate over any question affecting only individual members;

    (2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

    (3) whether the prosecution of separate actions by or against individual members of the class would create a risk of

        i inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

        ii adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

    (4) the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues;

    (5) whether the particular forum is appropriate for the litigation of the claims of the entire class;

    (6) whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate actions;

    (7) whether it is likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action.

(b) Where equitable or declaratory relief alone is sought, the court shall consider

    (1) the criteria set forth in subsections (1) through (5) of subdivision (a), and

    (2) whether the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final equitable or declaratory relief appropriate with respect to the class.

(c) Where both monetary and other relief is sought, the court shall consider all the criteria in both subdivisions (a) and (b).

■ "In determining fairness and efficiency, the court must balance the interests of the litigants, [both] present and absent, and of the court system." *Janicik*, 451 A.2d at 461. Appellees argue that it would be unfair and inefficient to certify Appellants' claim as a class action because their claims do not satisfy the typicality requirement because their interests are "not sufficiently aligned with those of the typical taxpayer. . . . ." (Appellees' Brief, p. 9.) The concerns raised by this assertion, however, were addressed and diffused in our analysis of the typicality requirement.

■ Appellees' primary argument, and the major concern of Common Pleas, is that Appellants' recovery is likely to be so small in relation to the expense and effort of administering the action that class certification is not justified. However, the Supreme Court has found an abuse of discretion where a trial court denied class certification on the grounds that the monetary relief that was sought was trivial in amount in relation to the expense and effort of maintaining the class action, based on a determination that the average recovery would be $13.61 for each class member. *Kelly v. County of Allegheny*, 519 Pa. 213, 546 A.2d 608 (1988). Moreover, public policy considerations and the avowed purpose of the class action procedure is to permit the aggregation of small claims that would otherwise go unlitigated in individual actions. *Id.* Therefore, we hold that a class action in this instance is a fair and efficient method for adjudication.

■ As to the remaining factor contained in Pa. R.C.P. No. 1708, a consideration of potential difficulties in managing a class action is generally not accorded much weight. *Janicik.* Throughout a class action, the court has extensive powers to ensure the efficient conduct of the action and it has the power to revoke, alter or modify its certification order if later developments in the litigation render class certification inappropriate. *Id.* With this understanding, we conclude that there are no significant management concerns at this point to warrant denial of certification on these grounds.

In denying class certification, Common Pleas appeared unduly concerned with the motives of Appellants. Failure of certification here would mean that court-imposed/across-the-board identical assessment increases would mean more disparate tax burdens, the essence of this litigation, which would escape important review and would result in the impaired ability of property owners of this state to challenge universally applied tax increases on the grounds that any monies refunded would be, of necessity, provided by the taxpayers themselves. Accordingly, we reverse the order of the Allegheny Court of Common Pleas denying class certification, and the case is remanded for further proceedings in accordance with this opinion.

### ORDER

**NOW**, March 11, 2002, the order of Court of Common Pleas of Allegheny County in the above-captioned matter is hereby reversed, and the case is remanded for further proceedings in accordance with this opinion.

Jurisdiction relinquished.